UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHERISSIA WILLIAMS,

                    Plaintiff,

                    **REPORT AND RECOMMENDATION**
- against -                    22-CV-6861-AMD-SJB

PLAYSCRIPTS, INC. and SEAN CERCONE,

                    Defendants.
-----------------------------------------------------------x

**BULSARA, United States Magistrate Judge:**

On June 12, 2023, the parties reported that they had reached a settlement in this wage-and-hour litigation. (Report of Mediation Settled dated June 13, 2023). The Court then set a deadline for the parties to file their motion for settlement approval. (Order dated June 14, 2023). Lawyers drafted written agreements, but they were never executed by Plaintiff Cherissia Williams ("Williams").

Defendants have moved to enforce the settlement and for sanctions. (Not. of Mot. to Enforce the Settlement dated Oct. 18, 2023 ("Mot. to Enforce Settlement"), Dkt. No. 27). Separately, Defendants have also moved to seal the unredacted versions of its exhibits. (Mot. for Leave to File Under Seal dated Oct. 18, 2023 ("Mot. to Seal"), Dkt. No. 26). For the reasons outlined below, the Court recommends that Defendants' motion to enforce and motion for sanctions be denied, but that their motion to seal be granted.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Cherissia Williams commenced this litigation on November 9, 2022 against Playscripts, Inc. ("Playscripts") and Sean Cercone ("Cercone," and collectively, "Defendants"). (Compl. dated Nov. 9, 2022 ("Compl."), Dkt. No. 1). Williams was hired

as a receptionist for Playscripts in December 2017. (*Id.* ¶ 19). She alleges that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, by failing to pay her overtime. (*Id.* ¶¶ 25–27, 41, 97–100). Williams also alleges that Defendants failed to pay her spread of hours compensation under the New York Labor Law, N.Y. Lab. Law §§ 160–199, and they failed to provide her with a wage notice under the Wage Theft Protection Act. (*Id.* ¶¶ 2, 42, 50, 105–08, 109–12). She further claims that Defendants subjected her, as a black employee, to racial discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-101 *et seq.* (*Id.* ¶ 1). Defendants allegedly failed to pay her the same as her white counterparts, and she was denied promotions in favor of less qualified white employees. (*Id.* ¶¶ 52, 54, 58–60, 63, 65). Finally, Williams alleges that she was fired by Cercone in retaliation for her complaints about discrimination. (Compl. ¶ 96).

On February 23, 2023, the Court adopted the parties' proposed discovery schedule and referred them to the Eastern District of New York's mediation program. (Scheduling Order dated Feb. 23, 2023; Order Referring Case to Mediation dated Feb. 23, 2023). The parties selected Joseph DiBenedetto as their mediator. (Selection of Mediator dated Mar. 31, 2023).

The mediation took place on May 11, 2023. (Decl. of Liane Fisher ("Fisher Decl."), Dkt. No. 32 ¶ 3). Williams and Cercone attended the mediation along with their respective counsel. (Defs.' Mem. of Law in Supp. of Mot. to Enforce ("Defs.' Mem. of Law"), Dkt. No. 27-24 at 3). The parties both agree that they reached a resolution in principle at the mediation. (*Id.* at 3; Pl.'s Mem. of Law in Opp'n to Mot. to Enforce

2

("Pl.'s Opp'n"), Dkt. No. 33 at 5; Fisher Decl. ¶ 5). Following the mediation, Williams's counsel sent a proposed term sheet to Defendants' counsel (the "Term Sheet"). (Email dated May 11, 2023 ("Term Sheet"), attached as Ex. D to Decl. of Charles Bergin ("Bergin Decl."), Dkt. No. 27-5). The Term Sheet stated:

> Subject to execution of a full settlement agreement and general release, the parties have agreed to settle this matter for [REDACTED] upon the following terms:
>
> 1. Mutual non-disparagement agreement whereby Sean Cercone, Rachel Keimach, and Jeff Keiholtz, on the one hand, and Ms. Williams, on the other hand, agree to not make any statements that negatively affect the name of reputation of the other;
> 2. Mutual confidentiality provision whereby the parties agree to keep the terms of the agreement and underlying facts of the case confidential;
> 3. Neutral job reference for Ms. Williams whereby Defendants provide to prospective employers of Plaintiff her dates of employment and job title only;
> 4. Payment within 14 days of the execution of the agreement or court approval, if required.
>
> Counsel will confer in good faith to effectuate a confidentiality agreement, if possible.

(*Id.*).

The Court set a deadline of July 5, 2023 for the parties to file a motion for settlement approval under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (Order dated June 14, 2023). The Court granted four further extensions, giving the parties more time to "finalize the details" and "execute" the agreement. (Dkt. Nos. 23–25). On August 2, 2023, Williams's counsel sent Defendants' counsel two draft settlement agreements: the "Draft FLSA Agreement," resolving Plaintiff's wage and hour claims, (FLSA Settlement Agreement ("Draft FLSA Agreement"), attached as Ex. U to Bergin Decl., Dkt. No. 27-22), and the "Draft Employment Agreement," resolving Plaintiff's Title VII, NYSHRL, and NYCHRL claims, (Confidential Settlement Agreement

3

("Draft Employment Agreement"), attached as Ex. V to Bergin Decl., Dkt. No. 27-23). In relevant part, the Draft Employment Agreement states, in bold and capital letters:

> **By signing this Confidential Separation Agreement and General Release, Plaintiff acknowledge** [sic] **that:**
>
> **. . . (g) THIS AGREEMENT SHALL NOT BE ENFORCEABLE OR EFFECTIVE UNTIL AFTER THE 7-DAY REVOCATION PERIOD HAS EXPIRED.  THIS AGREEMENT IS NULL AND VOID IF PLAINTIFF FAILS TO SIGN AND ACCEPT IT OR IF PLAINTIFF REVOKES HER ACCEPTANCE OF THIS AGREEMENT.**

(*Id.* ¶ 22).  The Draft FLSA Agreement likewise provides that "[t]he Agreement shall become effective immediately after the eighth (8th) day after Plaintiff signs this Agreement . . . .  In the event that Plaintiff does not accept this Agreement, . . . [it] shall be deemed automatically null and void."  (Draft FLSA Agreement ¶ 17).  Both agreements include a "merger clause":

> This Agreement represents the complete understanding between the Parties, may not be changed orally, and supersedes any and all prior agreements between the Parties. . . .  No other promises or agreements shall be binding or shall modify this Agreement unless signed by the Parties hereto, or counsel for and on behalf of the Parties.

(*Id.* ¶ 12; *see* Draft Employment Agreement ¶ 18).[1]

Counsel shared the draft agreements with their clients; on September 18, 2023, Williams contacted her counsel indicating that she refused to sign either agreement.

---

[1] The Draft Employment Agreement includes almost identical language:

> The Agreement, along with the Settlement Agreement of Unpaid Wage Claims and Release, represent the complete understanding between the parties, may not be changed orally and supersede any and all prior agreements between the parties. . . .  No other promises or agreements shall be binding or shall modify this Agreement unless signed by the parties hereto, or counsel for and on behalf of the Parties.

(Draft Employment Agreement ¶ 18).

4

(Fisher Decl. ¶¶ 8–10). Her counsel informed Defendants of this rejection on September 19, 2023. (*Id.* ¶ 11). Neither party signed either agreement. (*Id.* ¶ 13).

Defendants moved to enforce the unsigned and unexecuted draft written agreements. (Mot. to Enforce Settlement; *see* Defs.' Mem. of Law at 2). Defendants also moved for sanctions, (Defs.' Mem. of Law at 2, 19–21), and separately, filed a motion for leave to file unredacted versions of the Term Sheet and Draft Employment Agreement under seal, (Mot. to Seal).[2] The Court held a status conference on November 8, 2023, and then a settlement conference on December 7, 2023 with Williams and her counsel. (Minute Entry & Order dated Nov. 8, 2023; Minute Entry & Order dated Dec. 7, 2023). However, a resolution was not reached. (Letter dated Dec. 20, 2023).

## DISCUSSION

The Court concludes that neither the Draft FLSA Agreement nor the Draft Employment Agreement is enforceable. The Term Sheet agreed upon at the mediation is similarly unenforceable.

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Acun v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 852 F. App'x 552, 553 (2d Cir. 2021) (quoting *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007)). When determining whether to enforce a settlement in the absence of a signed writing, courts are

> to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the

---

[2] Defendants filed both redacted and unredacted versions of the agreements on the docket. In this opinion, the Court cites only to the redacted version of the papers. The only redaction is to the monetary amount, which is irrelevant to whether the agreements are unenforceable.

alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). "No single factor is decisive, but each provides significant guidance." *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997). "We therefore evaluate each of the *Winston* factors separately . . . and then assess them together." *Shinhan Bank v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 739 F. App'x 55, 57 (2d Cir. 2018).[3]

As a threshold matter, the parties agree that the *Winston* factors apply here for determining whether the settlement is enforceable. (Defs.' Mem. of Law at 7–10, 17–18; Pl.'s Opp'n at 14–18).[4] However, neither side addresses the most important feature of this dispute: in the typical enforcement context, a party seeks to enforce an *oral* settlement agreement in the absence of a writing, but here, Defendants are seeking to enforce *written but unexecuted* agreements (and ones that explicitly state that they are not effective except upon execution). Because of this, the cases they cite and which analyze the *Winston* factors in the context of an oral settlement agreement are unhelpful

---

[3] The parties assume the enforcement and interpretation of the agreements is governed by New York, and not federal, law. (*See* Defs.' Mem. of Law at 12; Pl.'s Opp'n at 9–10). The Court finds it appropriate to follow New York law, as the Second Circuit has suggested in this context. *Landau v. Am. Int'l Grp., Inc.*, 164 F.3d 618, 1998 WL 712430, at *1 (2d Cir. 1998) (table) ("We need not address the question of whether federal common law or New York law governs the interpretation of the Agreement with respect to its validity as a release of rights under a federal statute, because the content of federal common law in this context would in any event be supplied by New York law[.]").

[4] Williams contends that the Draft Employment Agreement and Term Sheet are unenforceable because they violate New York State General Obligations Law section 5-336(b), which places limits on the use of nondisclosure agreements in certain workplace settlement agreements. (Pl.'s Opp'n at 9–12). The Court does not reach this argument because it finds that the agreements are unenforceable on other grounds.

6

to the question presented.  The Court concludes unexecuted written agreements that provide they are effective only upon signing are not enforceable.

        A.        <u>Express Reservation</u>

The first factor, "the weightiest of the four," *Samuel v. Bd. of Educ.*, No. 12-CV-4219, 2015 WL 10791896, at *3 (E.D.N.Y. Aug. 11, 2015) (quotations omitted), *aff'd*, 668 F. App'x 381, 382 (2d Cir. 2016), weighs heavily against enforcement.  "The court is to consider . . . whether there has been an express reservation of the right not to be bound in the absence of a writing[.]" *Winston*, 77 F.2d at 80.  In considering whether any party has reserved the right not to be bound absent a signed writing, courts examine both the oral agreement and whether surrounding "facts and circumstances" implied such a reservation.  *Pullman v. Alpha Media Publ'g, Inc.*, No. 12-CV-1924, 2014 WL 5043319, at *10 (S.D.N.Y. Mar. 14, 2014), *report and recommendation adopted in part*, 2014 WL 5042250, at *3 (Sept. 10, 2014), *aff'd*, 624 F. App'x 774, 780 (2d Cir. 2015).  "[C]onsiderable weight is put on a party's explicit statement that it reserves the right to be bound only when a written agreement is signed."  *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75 (2d Cir. 1984).

The Second Circuit's decision in *Ciaramella v. Reader's Digest Association* resolved a case nearly identical to the present one.  131 F.3d 320 (2d Cir. 1997).  In *Ciaramella*, the parties negotiated a settlement resolving the plaintiff's ADA and ERISA claims.  *Id.* at 321.  Defendant's draft agreement provided that the "settlement would not be effective until executed by all the parties and their attorneys." *Id.*  The draft also included a merger clause.  *Id.* at 324.  Plaintiff's counsel communicated proposed revisions and told defendant's counsel that they had "a deal."  *Id.* at 325.  However,

7

plaintiff refused to sign the agreement. *Id.* The district court granted Defendant's motion to enforce the settlement. *Ciaramella*, 131 F.3d at 321.

The Second Circuit reversed. *Id.* It concluded that the language in the draft agreement meant what it said—the agreement would not be effective until signed. Because "courts should avoid frustrating the clearly-expressed intentions of the parties," *id.* at 324, "if the parties intend not to be bound until the agreement is set forth in writing and signed, they will not be bound until then." *Id.* at 322. "[Plaintiff's] signature was meant to signify his voluntary and informed consent to the terms and obligations of the agreement. By not signing, he demonstrated that he withheld such consent." *Id.* at 325. And the presence of the merger clause underscored the fact that "the parties did not intend to be bound prior to the *execution* of a written agreement." *Id.* at 324 (emphasis added).

Since *Ciaramella*, the Second Circuit has repeatedly applied the same principle—a settlement agreement that states it is only effective upon execution cannot be enforced prematurely. *See, e.g.*, *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 831 (2d Cir. 2019) ("By their own express terms, the unexecuted agreements . . . were not binding contracts."); *CAC Grp. Inc. v. Maxim Grp. LLC*, 523 F. App'x 802, 805 (2d Cir. 2013) ("Th[e] language indicates that the parties understood that the written agreement would effectuate a binding contract and not merely memorialize a contract that had already been entered into. Furthermore, the draft agreement contains a merger clause . . . . Thus, the contract drafts, combined with the parties' other written communications, conclusively establish a mutual intent not to be bound prior to execution of the formal documents[.]" (citation and quotations omitted)); *Kaczmarcysk v. Dutton*, 414 F. App'x 354, 356 (2d Cir. 2011) ("[W]e conclude that the District Court

8

erred in determining that the settlement agreement should be enforced. 'When a party gives forthright, reasonable signals that it means to be bound only by a written agreement, courts should not frustrate that intent.'" (alteration omitted) (quoting *R.G. Grp., Inc.*, 751 F.2d at 75)).[5]

*Ciaramella* resolves this case. "Parties who do not intend to be bound until the agreement is reduced to a signed writing are not bound until that time." *Powell*, 497 F.3d at 129 (citing *Ciaramella*, 131 F.3d at 322). The Draft Employment Agreement provides—in bold and capital letters—that the agreement is "null and void if Plaintiff fails to sign and accept it." (Draft Employment Agreement ¶ 22). This language is an unambiguous reservation of Plaintiff's right not to be bound absent her execution of the written agreement. *See, e.g., supra* at pp. 7–8; *Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F. Supp. 3d 262, 268 (S.D.N.Y. 2022) ("Here, a reservation of the right not to be bound in the absence of a final, written settlement agreement is apparent from the terms of the draft agreements."). As for the Draft FLSA Agreement, like in *Ciaramella*, the document contains language that it shall "become effective immediately after the eighth (8th) day *after Plaintiff signs this Agreement*." (Draft FLSA Agreement ¶ 17 (emphasis added)). This acts as condition precedent that has not been fulfilled: the Draft FLSA Agreement is effective only upon Williams's signature, which she did not provide. *Sprint Commc'ns Co. v. Jasco Trading, Inc.*, 5 F.

---

[5] Defendants contend *Kaczmarcysk* should be disregarded because it is a summary order and not precedential. (*See* Defs.' Reply Mem. of Law in Supp. of Mot. to Enforce ("Defs.' Reply"), Dkt. No. 35 at 4). But *Kaczmarcysk* is merely one of a legion of authorities supporting the same point. And importantly, "[w]hile lacking precedential value, [courts] are . . . permitted to consider summary orders for their persuasive value, and often draw guidance from them in later cases." *Force v. Facebook, Inc.*, 934 F.3d 53, 66 n.21 (2d Cir. 2019) (quotations omitted).

Supp. 3d 323, 334–35 (E.D.N.Y. 2014) ("The language in the preamble clause which states that the Settlement Agreement is 'made and entered into as of the last date of execution,' suggests that the parties could not have 'entered into' the Settlement Agreement prior to execution. . . . As the court in *Ciaramella* observed, the presence of such a clause is indicative of an intent not to create a binding settlement agreement until the date of execution."). "By not signing, [Plaintiff] demonstrated that [s]he withheld such consent." *Ciaramella*, 131 F.3d at 325.

The merger clauses in both draft agreements confirm that the parties all intended not to be bound absent execution. The Draft Employment Agreement and Draft FLSA Agreement state that the agreements "represent[] the complete understanding between the parties," and that "[n]o other promises or agreements shall be binding or shall modify [the agreements] unless signed by the parties hereto." (Draft Employment Agreement ¶ 18; Draft FLSA Agreement ¶ 12). "The presence of . . . a merger clause"—because it precludes consideration of prior oral agreements and understandings—"is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Ciaramella*, 131 F.3d at 324; *see, e.g.*, *Stewart v. City of New York*, No. 15-CV-7652, 2017 WL 4769396, at *2–*3 (S.D.N.Y. Oct. 20, 2017) (identifying merger clause as fact weighing against enforcement), *report and recommendation adopted*, 2017 WL 5897442, at *1 (Nov. 29, 2017).

Defendants rely on *Pretzel Time, Inc. v. Pretzel International, Inc.*, No. 98-CV-1544, 2000 WL 1510077 (S.D.N.Y. Oct. 10, 2000), to contend that merger clauses are merely "boilerplate language" that do not weigh against enforcement. (*See* Defs.' Reply at 4–5). The movants in *Pretzel Time* were *not* seeking to enforce unexecuted draft agreements, but an oral agreement that was made on the record. 2000 WL 1510077, at

10

\*1–\*2. The *Pretzel Time* court determined that the proffered "merger clause" in the unexecuted agreement did not preclude the enforcement of the oral agreement. *See id.* at \*3.[6]

But *Pretzel Time* provides no relief to Defendants. Even if the merger clauses are not considered here, the provisions requiring that the Draft Agreement be executed before the contracts are effective nonetheless demonstrate an intent not to be bound by unexecuted versions. Nor does *Pretzel Time* permit enforcement of the Term Sheet signed at the mediation in this case. Though the *Pretzel Time* court enforced an oral agreement from an informal mediation, it did so because the oral agreement did not contain a condition precedent. *See* 2000 WL 1510077, at \*3 ("In [*Ciaramella*], the Second Circuit found that there was an express reservation where the oral agreement itself provided that it 'shall not become effective . . . until it is signed' on the 'Execution Date.' No such language appears in the March 31, 2000 agreement." (second alteration in original) (quoting *Ciaramella*, 131 F.3d at 324)). In contrast, here, the Term Sheet makes any settlement conditional on subsequent, executed written agreements: it is "[s]*ubject to* the execution of a full settlement agreement and general release." (Term Sheet (emphasis added)). In other words, the Term Sheet itself has a reservation not to be bound—the parties agree *not* to settle until they can reduce the entire agreement to writing. *See, e.g., Vemics, Inc. v. Meade*, No. 06-CV-8716, 2009 WL 2191334, at \*2 (S.D.N.Y. July 23, 2009) (denying motion to enforce settlement agreement where

---

[6] The *Pretzel Time* court did not conclude that the language in the draft agreement *was*, in fact, a merger clause; that was how one party characterized it. 2000 WL 1510077, at \*3. Indeed, if it was a merger clause, it was a flimsy and incomplete one at best, unlike the one here. *Id.* ("Pretzel Time's counsel included language providing that the written contract would 'supersede all prior agreements[.]'").

11

Defendants failed to satisfy the condition precedent). That condition precedent was not satisfied, so the first *Winston* factor clearly and heavily weighs against enforcement the Term Sheet.

>B.  Partial Performance

The second factor, whether any party has partially performed, weighs slightly in favor of enforcement. This factor "under the *Winston* test is met when one party has partially performed its obligations under the settlement, and that performance has been accepted by the party disclaiming the existence of an agreement." *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 250 (E.D.N.Y. 2002).

Defendants argue that the cessation of litigation on both sides and the reporting of the settlement on the public docket constitutes partial performance. (Defs.' Mem. of Law at 8–9). But this case was in its earliest stages when the parties reached a settlement, and Defendants' cessation of litigation did not impose significant costs— after the mediation, little activity beyond these enforcement proceedings has taken place. *See Ciaramella*, 131 F.3d at 325 (finding no partial performance where defendant provided no payment or letter of reference to plaintiff). And Defendants do not specifically identify any injury—such as a loss of particular evidence or witness unavailability—from settling the case but learning later that Plaintiff would not sign. To be sure, the Second Circuit has "not specifically addressed" whether the cessation of litigation and the memorializing of the settlement agreement constitute partial performance. *Acun*, 852 F. App'x at 555. Even though this litigation is in its earliest stages, Defendants did cease discovery for several months in reliance on the settlement in principle, (*see* Defs.' Reply at 8); such circumstances suggest partial performance and weighs slightly in favor of enforcement.

12

C. <u>Agreement to All Terms</u>

The third factor, whether all terms have been agreed to, weighs in favor of enforcement when "there was 'literally nothing left to negotiate.'" *Winston*, 777 F.2d at 82 (quoting *R.G. Grp.*, 751 F.2d at 76); *Attestor Value Master Fund*, 940 F.3d at 831 (same). The inquiry in this regard is whether the agreement "contained all of the material terms of the settlement." *Acun*, 852 F. App'x at 555; *see also Ciaramella*, 131 F.3d at 325 ("In *Winston*, this Court found that the existence of even 'minor' or 'technical' points of disagreement in draft settlement documents were sufficient to forestall the conclusion that a final agreement on all terms had been reached." (quoting *Winston*, 777 F.2d at 82–83)); *Tangtiwatanapaibul v. Tom & Toon Inc.*, No. 20-3852, 2022 WL 17574580, at *3 (2d Cir. Dec. 12, 2022) ("Parties may choose to bind themselves before fully agreeing to all terms provided that the parties have agreed to the material terms.").

The Term Sheet states that there was one material term that had not been finalized at the time of the mediation—the confidentiality provision. (Term Sheet ("Counsel will confer in good faith to effectuate a confidentiality agreement, if possible.")). This provision was plainly material term for both sides, since it was a part of the consideration that Williams would have received for dismissing the lawsuit, and it is the professed reason that Williams chose to not sign the agreements. (Mot. to Seal at 1). Indeed, after the mediation, counsel continued to negotiate with each other about the confidentiality term. (*See* Defs.' Mem. of Law at 5 (describing how counsel exchanged "draft" and "proposed" confidentiality provisions in August and September 2023)). Although Defendants argue that Williams's reservations about confidentiality were irrational or in bad faith, (Defs.' Reply at 6–7), that is irrelevant: it was plainly a

13

term to be negotiated. "The outcome [of the Court's inquiry] . . . does not turn on the reasonableness of [Plaintiff]'s demands, but rather on her right to be bound only by a settlement reflecting the precise concessions she was willing to make." *Xie*, 632 F. Supp. 3d at 269. Therefore, this factor also weighs against enforcement.[7]

        D.        <u>Type of Contract Usually Committed to Writing</u>

The fourth factor, whether the contract is a type typically memorialized in writing, also weighs heavily against enforcement. "Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326. In analyzing the effect of this factor, courts may look to the "complexity of the underlying agreement." *See id.* ("We have also found that the complexity of the underlying agreement is an indication of whether the parties reasonably could have expected to bind themselves orally."). Here, Defendants seek to enforce a settlement agreement that resolves FLSA claims. "Some courts have noted that in FLSA cases such as this one, the fourth factor weighs heavily against enforcement because agreements to settle FLSA claims are virtually always memorialized in writing." *Fernandez v. HR Parking Inc.*, 577 F. Supp. 3d 254, 261 (S.D.N.Y. Dec. 28, 2021)

---

[7] Defendants also argue that the Draft FLSA Agreement and Draft Employment Agreement were essentially completed before Williams refused to sign, including the confidentiality provision. (Defs.' Mem. of Law at 9–10, 18). Yet both drafts included provisions allowing and encouraging Williams to consult with her attorney before signing. (*See* Draft Employment Agreement ¶ 22(f) ("Plaintiff has been advised to consult with an attorney prior to executing this agreement and has in fact done so[.]"); Draft FLSA Agreement ¶ 5 ("Plaintiff represents and certifies that she has carefully read and fully understands all of the provisions and effects of this Agreement and had thoroughly discussed all aspects of this Agreement . . . with her attorney . . . and that she made this decision after careful thought and a reasonable period of time to consider this Agreement, and after an opportunity to consult with her attorney.")). Though negotiations about confidentiality may have ended, Williams had not yet agreed, even if her attorney had. After consulting with her attorney, she refused to sign, meaning that the agreement was still not executed or binding.

(quotations omitted) (collecting cases). That is because the parties would have been required to submit the FLSA agreement for Court approval under *Cheeks v. Freeport Pancake House, Inc. See, e.g.*, *Velazquez v. Yoh Servs., LLC*, No. 17-CV-842, 2017 WL 4404470, at *3 (S.D.N.Y. Sept. 25, 2017) ("Put otherwise, no settlement of an FLSA case is enforceable until it has been approved by a federal judge[.] This Court requires parties to submit their settlements in writing, for approval, together with a joint letter motion. That could not possibly happen here."). "A prerequisite before submission for approval by the court is a fully executed settlement agreement." *Hernandez v. Fresh Diet Inc.*, No. 12-CV-4339, 2017 WL 4838328, at *4 (S.D.N.Y. Oct. 25, 2017). This factor thus weighs against enforcement of the agreements because an unexecuted draft is not in a form which the Court could approve. *See id*. at *5 ("[A] fully executed settlement agreement has not been submitted to the Court for *Cheeks* approval and the Court has not endorsed the stipulation of dismissal. Therefore, the settlement is not binding. This reason alone is enough of a basis to deny Plaintiffs' motion.").

\*          \*          \*

It is a familiar and established principle of contract law that "if the parties intend not to be bound until the agreement is set forth in writing and signed, they will not be bound until then." *Ciaramella*, 131 F.3d at 322. Yet, despite Williams's clear and unequivocal reservation of her right to choose not to sign the draft agreements—provisions that Defendants themselves negotiated and agreed to in both draft agreements and the Term Sheet—they nonetheless seek to enforce these contracts. "Enforcing premature . . . settlements against the expressed intent of one of the parties will not further a policy of encouraging settlements." *Id*. at 323. Three of the four *Winston* factors weigh against enforcement, and importantly, the express language in

15

the draft agreements reserving Plaintiff's right to be bound in the absent of her execution is close to dispositive. *See RKG Holdings, Inc. v. Simon*, 182 F.3d 901, 1999 WL 464979, at *1 (2d Cir. 1999) (table) ("In the event that there is a writing between the parties 'show[ing] that [the plaintiff] did not intend to be bound,' . . . a court 'need look no further than the first [*Winston*] factor.'" (first alteration in original) (quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989))).

In light of the totality of the circumstances, the Court finds that the Term Sheet, Draft Employment Agreement, and Draft FLSA Agreement are all unenforceable and therefore recommends that Defendants' motion to enforce and for sanctions be denied.[8]

## THE MOTION TO SEAL

Lastly, Defendants separately filed a motion to seal the unredacted versions of the Draft Employment Agreement and the Term Sheet, contained in an email dated May 11, 2023. (Mot. to Seal at 1–2). The motion to seal is granted. The motion to enforce settlement is accompanied by redacted filings on the public docket, and the redactions therein are narrowly tailored to shield only that information which is necessary to be under seal: the settlement amount. As such, the items proposed to be sealed are limited and satisfy the standards for limiting public access, as set forth in *Lugosch v. Pyramid*

---

[8] Defendants asks that the Court award them attorney's fees and costs as a sanction. (Defs.' Mem. of Law at 19–21). Defendants claim that Williams committed sanctionable behavior in refusing to sign the settlement agreements. (*Id.* at 20–21). However, the Court has already found that an enforceable settlement agreement does not exist. There is therefore no underlying misconduct to provide a basis to award sanctions. *See, e.g., Junjiang Ji v. Jling Inc.*, No. 15-CV-4194, 2019 WL 1441130, at *13 n.6 (E.D.N.Y. Mar. 31, 2019) ("Defendants also identify Plaintiffs' decision to withdraw from the settlement agreement as a basis for sanctions. In light of this Court's denial of Defendants' motion to enforce the settlement agreement, however, the Court rejects any arguments for sanctions premised on this basis." (internal citation omitted)).

16

*Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Defendants' motion to seal is therefore granted.

Separately, the Court *sua sponte* placed Plaintiff's counsel's memorandum and declaration in opposition to the motion to enforce settlement under seal. (Fisher Decl.; Pls.' Opp'n; *see* Order dated Nov. 7, 2023; Order dated Aug. 1, 2024). The declaration and memorandum inadvertently contained the unredacted Draft Employment Agreement and Term Sheet. (*See* Order dated Nov. 7, 2023; Order dated Aug. 1, 2024; Pls.' Opp'n at 5; Confidential Settlement Agreement, attached as Ex. 4 to Fisher Decl., Dkt. No. 32; Email dated May 11, 2023, attached as Ex. 2 to Fisher Decl., Dkt. No. 32). However, this sealing is not narrowly tailored, as it encompasses the entirety of the declaration and memorandum, which the Court cites to and relies on in reaching its decision here. Thus, Plaintiff's counsel is directed to file a redacted version of her declaration and memorandum—with only the settlement amount in Exhibit 2, Exhibit 4, and on page 5 of the memorandum redacted—on the public docket.

## CONCLUSION

For the reasons stated above, the Court recommends denying Defendants' motion for settlement enforcement and their motion for sanctions. Separately, the motion to seal is granted. Furthermore, Plaintiff's counsel is directed to file a redacted version of her declaration, as detailed above, on the public docket by August 20, 2024.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601,

17

604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

SO ORDERED.

*/s/ Sanket J. Bulsara*  August 13, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York